Date signed December 30, 2009



PAUL MANNES
U. S. BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
## at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| MASTERCRAFT INTERIORS, LTD | : | Case No. 06-12759PM |
| KIMELS OF ROCKVILLE, INC. | : | Case No. 06-12770PM |
| | : | Jointly Administered Under |
| Debtors | : | Case No. 06-12769PM |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - : | | Chapter 11 |
| BRADFORD F. ENGLANDER, in his | : | |
| capacity as Plan Administrator for | : | |
| Mastercraft Interiors, Ltd. and | : | |
| Kimels of Rockville, Inc. | : | |
| Plaintiff | : | |
| vs. | : | Adversary No. 08-0383PM |
| | : | |
| HEKMAN FURNITURE CO. | : | |
| a/k/a HEKMAN FURNITURE COMPANY | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM OF DECISION

This case came before the court for trial of the Complaint filed by Bradford F. Englander, Plan Administrator for Mastercraft Interiors, Ltd., and Kimels of Rockville, Inc. against Hekman Furniture Co. The Complaint seeks recovery of three payments alleged to be preferences aggregating $85,967.00, together with the disallowance of Defendant's claim in the sum of $475,678.36 for goods sold and delivered to, but not paid for by, the Debtors. Under § 502(d) of the Bankruptcy Code, claims held by a transferee of an avoidable transfer under various sections

of the Bankruptcy Code are disallowed, including those held by the recipient of a preference avoidable under 11 U.S.C. § 547(b).  Subsequent to the receipt of payment No. 1 in the sum of $35,696.00 by the Defendant, but prior to the receipt of payments Nos. 2 and 3 that aggregated $50,271.00, Defendant sold and delivered goods to Debtors in an amount totaling $63,804.60.  As stipulated, these shipments of furniture were not secured by an otherwise unavoidable security interest and on account of which the Debtors did not make otherwise unavoidable transfers to or for the benefit of the Defendant.  Therefore, Defendant prevails on its subsequent new value defense under § 547(c)(4) of the Bankruptcy Code as to payment No. 1.

The Debtors were high-end furniture retailers.  Towards the end of their operations, they took and failed to hold in a separate fund a large number of consumer deposits for furniture that was never delivered.  Individuals making such deposits are granted a seventh priority claim of $2,425.00 by reason of § 507(a)(7) of the Bankruptcy Code in effect at the time the case was filed.  Because of the number of such priority claims, it is unlikely that there will be any significant distribution to holders of unsecured claims without priority, here, generally trade creditors.

Prior to trial of this Complaint, the parties entered into two Stipulations, Docket Entries No. 38 and No. 49, that facilitated  trial of this case.  It was stipulated that the three transfers in question were made while the Debtors were insolvent, that the transfers were made on or within 90 days before the filing of the bankruptcy cases, and that by virtue of receiving the transfers, the Defendant received more than it would have received (1) if the case were a case under Chapter 7, (2) had the transfers had not been made, and (3) had the Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.  In short, Defendant conceded that the Plaintiffs pleaded and proved a *prima facie* case.  In defense of this action, Defendant pleaded that recovery for the first transfer was barred by the new value exception of §547(c)(4), and that recovery for the second and third transfers was barred by § 547(c)(2) of the Bankruptcy Code as these payments were made in satisfaction of debts incurred in the ordinary course of business and were made in the ordinary course of its business or were made according to ordinary business terms.  By stipulation, the Defendant waived any defense that the payments were made according to ordinary business terms.

Section 547(g) of the Bankruptcy Code places the burden of proving the non-avoidability of a transfer under § 547(c) upon the defendant.  Section 547(c)(2) provides:

**11 U.S.C. § 547.  Preferences**

>(c) The trustee may not avoid under this section a transfer--
>
>            *            *            *            *            *
>
>(2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--
>
>>(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>>
>>(B) made according to ordinary business terms.

As noted above, this case is limited to whether the Defendant may avail itself of the exception of subsection (2)(A).

The essence of the preference law set forth in the House Committee Report on the Bankruptcy Reform Act of 1978 was quoted by the Supreme Court in the case of *Union Bank v. Wolas*, 502 U.S. 151, 160 (1991).  The *Wolas* court opines:

>The Bank and the trustee agree that § 547 is intended to serve two basic policies that are fairly described in the House Committee Report.  The Committee explained:
>
>>"A preference is a transfer that enables a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankrupt estate.  The purpose of the preference section is two-fold.  First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy.  The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors.  Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor.  Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally.  The operation of the preference section to deter 'the race of diligence' of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section--that of equality of distribution."  *Id.*, at 177-178, U.S. Code Cong. & Admin. News 1978, pp. 637, 6138.
>
>As this comment demonstrates, the two policies are not entirely independent.  On the one hand, any exception for a payment on account of an antecedent debt tends to favor the payee over other creditors and therefore may conflict with the policy of equal treatment.  On the other hand, the ordinary course of business exception may benefit all creditors by deterring the "race to the

courthouse" and enabling the struggling debtor to continue operating its business.

The purpose of the exception is to leave undisturbed the normal financial relations between the parties and to provide a safe haven for those who conduct business on normal terms.  However, the creditor must show a baseline of past practices between itself and the debtor. *Advo-System, Inc. v. Maxway Corp.*, 37 F.3d 1044, 1047 (CA4 1994.)

Before embarking on further study, it is important at this point to consider the amendment to § 547(c)(2) made by the Bankruptcy Abuse Prevention Consumer Protection Act of 2005.[1]  The superseded section had three prongs embodied in its subsection.  The first prong focused on whether the defendant was in the business of selling the goods during the preference period and whether the debtor was in the business of buying the goods, a matter rarely at issue.  In addition to the subsumption of this prong into § 547(c)(2), a second critical change was the substitution of the word "or" for the word "and" so that, by virtue of the 2005 amendments, Defendant succeeds if either subsection (c)(2)(A) or (c)(2)(B) is met.  Thus, in the analysis of this case, the test for the adequacy of the ordinary course defense is considerably loosened from the rule under which the decisions were made in such cases as *Advo-System, Inc. v. Maxway Corp., supra*, *In re Jeffrey Bigelow Design Group, Inc.*, 956 F.2d 479, 488 (CA4 1992), and *In re Daedalean, Inc.*, 193 B.R. 204, 211 (BC Md. 1996).

In the case of *In re Global Tissue LLC*, 302 B.R. 808 (D. Del. 2003), *aff'd,* 106 Fed. Appx. 99 (CA3 2004), the court states that, in determining whether payments were made in the ordinary course of the parties' dealings, the court should consider such factors as,

(1) the length of time the parties engaged in the type of dealing at issue;

---

[1] Former §547(c)(2) provided:

**11 U.S.C. § 547.  Preferences**
    \*       \*       \*       \*       \*
(c) The trustee may not avoid under this section a transfer--
    (2) to the extend that such transfer was--
        (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
        (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; **and**
        (C) made according to ordinary business terms.

>    (2) whether the subject transfer was in an amount more than usually paid;
>
>    (3) whether the payments were tendered in a manner different than previous payments;
>
>    (4)  whether there appears to be an unusual action by the debtor or creditor to collect on or pay the debt;
>
>    (5) whether the creditor did anything to gain an advantage in light of the debtor's deteriorating financial condition.

*Id*. at 812.  The court will examine this case in the light of these factors.

The only witness to testify was the Defendant's director of finance, Mark Bleeker.  For the most part, his testimony described the nature of the business relationship between the Debtors and the Defendant and the ordinary course of the transactions between them.  Orders were placed by Debtors through a sales representative and then shipped and invoiced.  Payments were habitually made on an erratic basis.  However, it must be appreciated that, while the Debtor Mastercraft was a very important customer of Hekman, this fact was probably unappreciated by its credit department.  Debtor took advantage of its favored position and appears to have, over the twenty-plus years that it dealt with Defendant, paid invoices when it was convenient to do so.  Looking at the other factors described in *Global Tissue*, there appear none of the exceptional flags on the payments that would bring them out of the course of dealings of these parties over so many years.  There was no unusual action, nor was there any indication of vigorous collection efforts on the part of Defendant.  The only thing that it did in the light of Mastercraft's deteriorating financial condition was simply to stop shipping merchandise, as it was owed nearly $500,000.00.

On the other hand, Plaintiff urges that the court should examine carefully those payments that carry due dates of 150 days out from shipment.  The court is unimpressed by this analysis.  To quote Gertrude Stein, "a payment is a payment is a payment."  The length of time that invoices were due was more or less meaningless in view of the state of affairs involving these parties, namely the leverage that Debtors had as favored customers of the Defendant.  Plaintiff's emphasis on invoices with 150-day terms does not portray a complete picture of the payment history to the Defendant.

The court finds that Defendant satisfied its burden of proof and that the two payments remaining in issue were made in the ordinary course of business between the parties.  An appropriate order will be entered.

cc:
Plaintiff
Plaintiff's Counsel
Defendant
Defendant's Counsel
United States Trustee

**End of Memorandum**